United States District Court
Southern District of Texas

**ENTERED**

July 15, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| K.J.,[1] | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00416 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff K.J. seeks judicial review of an administrative decision denying her applications for disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"). K.J. and Defendant Frank Bisignano, the Commissioner of the Social Security Administration (the "Commissioner") have both filed briefs. *See* Dkts. 8, 11. After reviewing the briefing, the record, and the applicable law, I recommend that the Commissioner's decision be affirmed.

## BACKGROUND

On August 16, 2022, K.J. filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning March 2, 2022. Her applications were denied and denied again upon reconsideration. On April 3, 2025, an Administrative Law Judge ("ALJ") held a hearing. On April 21, 2025, the ALJ issued a decision, finding that K.J. was not disabled. K.J. filed an appeal with the Appeals Council. In support

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions. This court has taken that guidance a step further in the interest of claimant's privacy and will use only initials in public opinions.

of her appeal, K.J. submitted new evidence: a six-page questionnaire completed by Heather Reed, a physician assistant. On September 3, 2025, the Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that K.J. "has not engaged in substantial gainful activity since March 2, 2022, the alleged onset date." Dkt. 7-1 at 27.

The ALJ found at Step 2 that K.J. "has the following severe impairments: obesity; degenerative disc disease of the cervical spine with radiculopathy and residual effects, post-surgical repair; degenerative disc disease of the lumbar spine with radiculopathy; osteoarthritis of the bilateral knees; intracranial bleed/hematoma; migraines; peripheral neuropathy; sleep apnea; and chronic kidney disease." *Id.* at 28.

At Step 3, the ALJ found that K.J. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*

Prior to consideration of Step 4, the ALJ determined K.J.'s RFC as follows:

[K.J.] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can stand and/or walk 4 hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday; she can lift and/or carry 10 pounds frequently and 20 pounds occasionally; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she can

3

occasionally perform overhead reaching with the bilateral upper extremities; she can frequently perform gross handling and fine fingering with the bilateral upper extremities; she can occasionally be exposed to extreme heat, extreme cold, and extreme humidity; she can have moderate exposure to noise/vibration; she can never work at unprotected heights; she can never work around dangerous machinery or workplace hazards; she can never drive; and, due to the combination of the claimant's combined impairments, she can understand, remember and carry out simple instructions, but no work performed in a production rate environment (such as assembly line work), involving only simple, work-related decisions, and having to deal with only occasional changes in a routine work setting.

*Id.* at 29–30.

At Step 4, the ALJ found that K.J. "is unable to perform any past relevant work." *Id.* at 33.

At Step 5, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [K.J.] can perform." *Id.* Thus, the ALJ found that K.J. "has not been under a disability . . . from March 2, 2022, [the alleged onset date,] through the date of [the ALJ's] decision." *Id.* at 34.

## DISCUSSION

K.J. raises two issues for my review: (1) "Whether the ALJ committed harmful error by failing to assess [K.J.]'s need for a cane"; and (2) "Whether the Appeals Council erred by finding Physician Assistant Heath[er] Reed's opinion did not create a reasonable probability that it would have changed the outcome of the ALJ's decision." Dkt. 8 at 4. For the reasons explained below, neither the ALJ nor the Appeals Council erred.

### A.    THE ALJ DID NOT ERR

In her opening brief, K.J. notes that she "testified three times during the 26-minute April 2025 hearing that she had to use a cane," including testimony "that she had a stroke in 2022, could not walk without her walking stick, and needed help balancing"; "that she could walk unassisted for five or ten minutes"; and "that she used a cane." Dkt. 8 at 5. K.J. also points out that the record shows that she

4

"had balance disturbance, gait abnormalities, and occasional dizziness" and "was prescribed a walker following [an] August 2022 surgery." *Id.* K.J. contends that, considering this evidence, the ALJ erred when he "failed to include, or state why he did not include, a limitation in the RFC to account for [K.J.]'s need for a cane or other assistive device." *Id.* I disagree.

The ALJ mentioned all the facts that K.J. recited in her opening brief. The ALJ observed that K.J. "was hospitalized from March 3, 2022, through March 13, 2022, for treatment of hematoma on the right side of her brain" (i.e., a stroke). Dkt. 7-1 at 30. The ALJ noted that K.J. "had balance problems, occasional dizziness, headaches, [and] gait abnormalities.". *Id.* The ALJ also noted that K.J. "suffered from gait instability" and ultimately had spinal surgery. *Id.* at 31. The ALJ further recounted K.J.'s testimony that "she requires the use of a walking stick to ambulate." *Id.* at 32. The ALJ was well aware that K.J. "ambulated with a cane." *Id.* at 31. Still, it was not error for the ALJ to craft an RFC without mentioning K.J.'s self-reported need for a cane.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). The only medical documentation in the record regarding K.J.'s need for a hand-held assistive device are prescriptions for a folding walker with wheels and a heavy-duty rolling walker following K.J.'s spinal surgery in August 2022. *See* Dkt. 7-1 at 534–35. These prescriptions, however, are silent as to the circumstance in which these devices are needed. Moreover, these prescriptions are not for a cane or a walking stick, which is the hand-held assistive device that K.J. claims she currently needs and uses. Perhaps most importantly, during a November 2022 follow-up, K.J.'s physician found on exam that she had "full strength throughout" and a "[n]ormal gait." *Id.* at 346. K.J. simply did not carry her burden to demonstrate that a cane is medically

5

required. Accordingly, the ALJ did not err in failing to discuss whether K.J. needed a hand-held assistive device when crafting K.J.'s RFC.

Even if the ALJ had erred, K.J. could not show prejudice. "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted). K.J. acknowledges that she can walk short distances unassisted. *See* Dkt. 8 at 5. Thus, by her own admission, K.J. needs a cane only for long distances. K.J. argues that "the vocational expert testified that if a person needed a cane for long distances, all the light jobs the ALJ relied on at step five to find [K.J.] not disabled would be precluded." *Id.* at 6. That is true, but the vocational expert also testified that even if K.J. had an RFC that incorporated the use of a cane for long distances, there would be sedentary jobs still available:

> There would be sedentary unskilled jobs with an SVP of 2. One would be that of a digital scan operator, DOT code would be 249.587-018, approximately 12,000 jobs in the national economy. A second would be a surveillance monitor, 379.367-010, approximately 20,000 jobs in the national economy, and a third would be that of a printed board assembler, 726.684-110, approximately 9,000 jobs in the national economy.

Dkt. 7-1 at 57. Thus, even if the ALJ erred (he did not), such error was not prejudicial, and remand is not required.

## B.    THE APPEALS COUNCIL ("AC") DID NOT ERR

The ALJ issued his decision on April 21, 2025. Three months later, on July 21, 2025, K.J. had Reed complete a six-page questionnaire. *See* Dkt. 7-1 at 12. According to Reed, K.J. can only sit or stand for up to one hour in an eight-hour day. *See id.* at 13. Reed also reports that K.J. is "[i]ncapable" of tolerating even low work stress and would be absent more than four days per month. *Id.* at 16. Despite having treated K.J. since only August 21, 2024, Reed opines that K.J.'s limitations, described in Reed's questionnaire, manifested on February 23, 2022. *See id.* at 17. In denying review, the Appeals Council wrote: "You submitted a medical source statement from Heather Reed, P.A., dated July 21, 2025 (6 pages). We find this

evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." *Id.* at 6. K.J. contends that the Appeals Council erred in not considering this six-page questionnaire. I disagree.

The Fifth Circuit has described the Appeals Council's obligations on review:

> In deciding whether to deny the claimant's request for review, the AC must consider and evaluate any "new and material evidence" that is submitted, if it relates to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b). If the AC finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," the AC will then review the case. *Id.* Otherwise, it will deny the claimant's request for review. *The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review.*

*Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (emphasis added).

There is simply nothing about Reed's questionnaire that suggests K.J. would have obtained a different outcome if Reed's opinion was considered. As the Commissioner notes, "the certified administrative record does not include any treatment records from Heather Reed to support the opinions she rendered in the Questionnaire." Dkt. 11 at 7. This is a markedly different situation than in *Shugart v. Kijakazi*, where I ordered remand because it was "conceivable that the ALJ could make a different administrative decision upon further review." No. 3:21-cv-00007, 2022 WL 912777, at *4 (S.D. Tex. Mar. 29, 2022). In *Shugart*, I was dealing with the ALJ's failure to evaluate a medical opinion, not the Appeals Council's decision whether to consider new evidence. Moreover, in *Shugart*, "[t]he administrative record contain[ed] [the opining physician]'s treatment notes, which include MRI test results, various examination findings, as well as discussions of Shugart's history of spinal surgery and related symptomology." *Id.* Here, however, there are no treatment records or treatment notes from Heather Reed. Accordingly, it is inconceivable that the ALJ would have reached a different result if he had considered Reed's questionnaire. Thus, the Appeals Council did not err.

## CONCLUSION

For the reasons discussed above, I recommend that the Commissioner's decision be affirmed.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this __5th__ day of July 2026.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8